[Civ. No. 37954. Second Dist., Div. Four. Apr. 28, 1971.]

EDWARD J. KIRBY, as Director, etc., Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,
Respondent;
WILLIAM J. KRAKER, Real Party in Interest.

## COUNSEL

Evelle J. Younger, Attorney General, and Jeffrey S. Wohlner, Deputy Attorney General, for Petitioner.

Floyd R. Mitzner for Respondent.

William J. Kraker in pro. per. for Real Party in Interest.

## OPINION

**KINGSLEY, J.**—Petitioner, Edward J. Kirby, Director of Alcoholic Beverage Control of the State of California (hereinafter sometimes referred to as the "department"), petitions the court for a writ of review of the decision of respondent Alcoholic Beverage Control Appeals Board of the State of California (hereinafter sometimes referred to as the "appeals board"). Petitioner, who is charged with the administration of alcoholic beverage licenses, executed an accusation against William Kraker, doing business as S.S. Friendship Cafe (hereinafter sometimes called the "licensee"), alleging that the licensee engaged in conduct contrary to public welfare and morals in violation of article XX, section 22 of the state Constitution, and section 24200, subdivision (a) of the Business and Professions Code.

An administrative hearing was held and the hearing officer issued a proposed decision in which he recommended that "The license is suspended for twenty (20) days, with execution of five (5) days of said suspension stayed upon the condition that no subsequent final determination be made, after hearing or upon stipulation and waiver, that cause for disciplinary action occurred within one (1) year from the effective date of this decision; that should such determination be made the Director of Alcoholic Beverage Control may, in his discretion and without further hearing, vacate this stay order and reimpose the stayed portion of the penalty; and that should no such determination be made, the stay shall become permanent." The

department adopted the proposed decision; the real party in interest filed a petition for reconsideration; the petition for reconsideration was denied.

The licensee appealed to respondent appeals board. The appeals board affirmed the department's decision in part, holding that the finding of guilt was sustained by the evidence, but it remanded the case to the department on the issue of penalty. That action was taken on the theory that the department had offered to settle the accusation on the basis of a 15-day suspension if the licensee would agree to waive his statutory hearing and agree to the proposed settlement, and that the imposition of the additional five days was a penalty for the licensee's exercise of his right to a full hearing.

The department argues: (1) that the appeals board was not entitled to take "official notice" of the proposed settlement, and (2) that its action was an improper interference with the discretion imposed on the department. For the reasons set forth below, we conclude that the action of the appeals board was erroneous and that its decision should be set aside and the decision of the department be reinstated.

The original disciplinary action arose out of an incident between Tepper, a deputy keeper employed by the sheriff's department, and the licensee Kraker. Tepper was assigned to levy a writ of attachment on the premises of S.S. Friendship Cafe. One day Kraker, who was intoxicated, refused to allow Tepper and his fellow officer, Patty, to go about their business, calling them both thieves, prohibiting them from going to the cash register, and not allowing them to count the money. Kraker harassed Patty with a burning candle. Kraker kicked Tepper, tried to hit him, grabbed him, called him names and threatened that his friends would testify against him.

In Tepper's judgment the bartender had less money than Tepper thought he should have had. Tepper told Kraker to bring forth the additional minimum of $300 or he was going to call the sheriff's office and close the premises.

There was another incident in which Kraker discussed monetary figures with Tepper. Kraker called Tepper and Patty names and Kraker would not let Tepper leave until he pushed Tepper out of the door. A citizen's arrest of Kraker was made by one of the deputies.

I

The case turns on the admissibility and effect of a document entitled "Stipulation and Waiver." That document is a printed form, apparently a form used by the department. It is headed with the printed words "In the Matter of the Accusation Against," followed by the licensee's name and address typewritten in the appropriate space; it bears the file number ap-

pearing at other places in the record before us. In pertinent part, the document reads as follows: (The first three numbered paragraphs are printed in the form; the fourth paragraph is typewritten.)

"The above-named respondent(s) does hereby:

"(1) Acknowledge receipt of the accusation (with printed statement to respondent) and forms for notice of defense and stipulation and waiver in the above-entitled action.

"(2) Stipulate that disciplinary action may be taken on the accusation and that such discipline may be determined on the basis of the facts contained in the investigative reports on file with the Department.

"(3) Waive his right to a hearing, reconsideration and appeal, and any and all other rights which may be accorded him pursuant to the Alcoholic Beverage Control Act or the Administrative Procedure Act.

"(4) Stipulate that the above-designated license shall be suspended for a period of fifteen (15) days."

The form contains a space for a date and a space for the signature of the licensee; it contains no space for any signature by or on behalf of the department. The form before us is unsigned.

At the hearing before the referee, the licensee offered this document in evidence as his exhibit "E." That part of the proceedings is reported as follows:

"MR. KRAKER: . . . And respondent's E for identification is a copy of the stipulation and waiver which was not acted upon or signed in this matter.

"MRS. JAFFE [Counsel for the department]: I would object. And furthermore, the only person to act upon and sign that stipulation and waiver would be the respondent himself.

"HEARING OFFICER: Well, all right, Mrs. Jaffe. I have indicated that I do not think these documents are material. That is still my position."

It will be noted that, on the record before us, it does not appear how the document came into the hands of the licensee, or that it ever came into existence or was transmitted to him by any authority of the department. The opinion of the appeals board merely states that it took "official notice"[1]

---

[1]The briefs and oral argument discussed whether or not the document was a proper subject of "judicial" notice. We do not regard that as an issue in this case. The document had been offered in evidence at the hearing and there marked for identification; as such it was properly in the appeal record and the appeals board

of the document. However, all parties have assumed that the document did, in fact, emanate from the department, that it was transmitted to the licensee on behalf of the department, that it constituted an offer to settle the proceeding against the licensee on the terms therein stated, and that, had the licensee executed the document and returnd it to the department, the proceeding would have terminated on those terms. Since, for the reasons set forth below, the document—no matter how validated—did not have the effect attributed to it by the appeals board, we accept those assumptions for the purpose of this opinion.

For the same reason, we need not decide the interesting question of whether or not the proscription against admission of offers of compromise, contained in subdivision (a) of section 1152 of the Evidence Code[2] applies in the light of the broad language of subdivision (c) of section 11513 of the Government Code.[3] Assuming that the document might—or even should—have been admitted into evidence,[4] it was not evidence of conduct which, in any way, estopped either the referee or the department, after a hearing, from imposing a penalty different from that originally proposed.

■ Even in cases strictly criminal, there is a public policy in favor of negotiations for compromise (*People* v. *West* (1970) 3 Cal.3d 595 [91 Cal. Rptr. 385, 477 P.2d 409]; a fortiori there is an equal policy in cases such as this. The department, acting on the basis of written reports, secures a prompt determination, at little administrative cost; the licensee avoids the risks that testimony at a formal hearing may paint him in a worse light than the reports and, also, avoids the costs and delay of a hearing. The

was properly aware of its existence. The reference in the board's opinion is no more than a holding that it should have been admitted in evidence.

[2]Evidence Code section 1152, subdivision (a) reads: "Evidence that a person has, in compromise or from humanitarian motives, furnished or offered or promised to furnish money or any other thing, act, or service to another who has sustained or will sustain or claims that he has sustained or will sustain loss or damage, as well as any conduct or statements made in negotiations thereof, is inadmissible to prove his liability for the loss or damage or any part of it."

[3]Government Code section 11513, subdivision (c) reads: "The hearing need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. The rules of privilege shall be effective to the extent that they are otherwise required by statute to be recognized at the hearing, and irrelevant and unduly repetitious evidence shall be excluded."

[4]Cf. *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1965) 62 Cal.2d 589, 595 [43 Cal.Rptr. 633, 400 P.2d 745].

licensee who rejects a proffered settlement hopes that the hearing will clear—or at least partially excuse—him and he hopes that, even if he is not found innocent, he will be dealt with less harshly than the department proposes. But if the department can never, no matter what a hearing may develop, assess a penalty greater than that proposed in its offer, a licensee has little to lose by rejection. Only the *cost* of a hearing is risked; he could not be otherwise harmed. In that situation, licensees would be induced to gamble on the chance of prevailing at the trial, while the department would lose much of its inducement to attempt settlement. The law should not permit that kind of tactic by an accused.

It follows that the mere fact—if it be a fact—that the department had once offered a settlement more favorable than the discipline ultimately imposed, is not, in and of itself, a ground for setting aside the penalty ultimately adopted.

Respondent board relies on *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1965) 62 Cal.2d 589, 595-597 [43 Cal.Rptr. 633, 400 P.2d 745], above cited. But that case does not help it here. Not only did *Harris* deal with an admittedly official statement of general policy, but the court expressly said of the schedule of penalties therein involved: "The face of the bulletin shows that it was contemplated that the schedule of penalties might not be followed where aggravating or mitigating circumstances were present, *and even in the absence of such circumstances a departure from the schedule would not necessarily show an abuse of discretion by the Department.*" (Italics supplied.)

## II

■ Respondent appeals board also argues that, although there is statutory authority under which the department may review a penalty, such review must be limited to a reduction of the penalty (Bus. & Prof. Code, § 24211), and in the case at bench the penalty was not reduced but increased by five days. We do not believe section 24211 of the Business and Professions Code limits the department in the particular factual situation that exists herein.

Business and Professions Code section 24211, reads as follows: "The department may on its own motion at any time before a penalty assessment is placed into effect and without further proceedings, review the penalty, but such review shall be limited to its reduction."

This section refers only to a reduction of a penalty at a time *after* the penalty is set by administrative action and before it is actually placed in effect by the department. The section has no application to a case such as

the one at bench where we are dealing with the original setting of a penalty by the department—that action is not a "review" of anything theretofore set or imposed.

## III

The action of the appeals board, being unsupported by the assumed existence of an offer of settlement, cannot stand. ■ The propriety of a penalty is a matter vested in the discretion of the Deparment of Alcoholic Beverage Control and its determination may not be disturbed unless there is a clear abuse of that discretion. (*Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1965) *supra,* 62 Cal.2d 589, 594.) The appeals board is not empowered to exercise full discretion in its independent judgment on conflicting evidence, but rather its powers are strictly limited.

The provisions in the 1954 amendment to the Constitution, article XX, section 22, that the Alcoholic Beverage Control Appeals Board shall determine whether the findings of the Department of Alcoholic Beverage Control are supported by substantial evidence, signifies no more than the substantial evidence rule. (*Martin* v. *Alcoholic Bev. etc. Appeals Bd.* (1959) 52 Cal.2d 238, 246 [340 P.2d 1].) ■ Neither the appeals board nor the courts in a proceeding for suspension of a license may disregard or overturn a finding of fact of the Department of Alcoholic Beverage Control for the reason that it considered a contrary finding would have been equally or more reasonable. (*Lacabanne Properties, Inc.* v. *Dept. Alcoholic Bev. Control* (1968) 261 Cal.App.2d 181, 185 [67 Cal.Rptr. 734].)

■ We cannot find a 20-day suspension of Mr. Kraker's license by the department to be an abuse of discretion under the circumstances of this case. Mr. Kraker, the licensee, assaulted the sheriff's deputies on several occasions and interfered with the performance of their duties. The case of *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1965) *supra,* 62 Cal.2d 589, 594, is clearly distinguishable. In that case it was held that *revocation* of an on-sale beer and wine license for certain infractions of the rules constituted an abuse of discretion when it appeared that the licensee operated for almost five years without a record of disciplinary action. In the case at bench Mr. Kraker's license was not revoked but merely suspended for 20 days for behavior which included physical violence and obstructionist tactics. The department did not abuse its discretion and the appeals board acted in excess of its authority when it substituted its own judgment for that of the department below.

The decision of the appeals board is annulled; the matter is remanded to the board with directions to enter a new decision, sustaining the action of the department in all particulars.

Files, P. J., and Dunn, J., concurred.